**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

SANDSHAKER LOUNGE & PACKAGE STORE, LLC,
a Florida limited liability company,

        Plaintiff,                         CASE NO.:  3:17-cv-686

v.

RKR BEVERAGE, INC., a Florida corporation,
ALOHA SCREEN PRINTING, LLC, CHAD
K. ROBELLO, and RODNEY L. ROBELLO,

        Defendants.

_____/

## DEFENDANT ALOHA SCREEN PRINTING'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

      Pursuant to Rule 12(b)(6) and NDLR 7.1 Defendant ALOHA

SCREEN PRINTING, INC. moves this Court for an order dismissing the

Amended Complaint [dkt 32-2] in this cause and in support of the Motion

offers the Court the following facts and authorities:

## I. Factual Background and Allegations

      Plaintiff commenced this action on September 15, 2017—the same

day Plaintiff voluntarily dismissed the state court lawsuit. The state court

lawsuit was commenced in November 2015 in Escambia County Circuit

Court and involved the same central allegations at issue in this action.  In

response to the Complaint filed in this action, the Defendants moved to dismiss all counts [dkt # 13, 14]. Thereafter Plaintiff attempted to file a voluntary dismissal of the dilution count [dkt #25]. The Court rejected the partial dismissal of one count and directed Plaintiff to file a motion for leave to amend and amended complaint [dkt #29].  Leave to amend was granted rendering the previously filed Motions to Dismiss moot. The First Amended Complaint is essentially  unchanged, but omits the claim for trademark dilution under Chapter 495.51, Fla. Stat. Defendants RKR Beverage, Rodney and Chad Robello have filed a separate motion to dismiss on similar grounds as presented here, however, arguments more specific to Aloha Screen Printing ("ASP") are contained herein.

A "Request for Judicial Notice of Related State Court Litigation" was previously filed [dkt #15] along with a Request for Judicial Notice of TTAB Cancellation Proceeding [dkt #16]. Defendants RKR and Chad Robello filed a Renewed Motion to Stay Proceedings Pending Award and Payment of Costs [dkt #36] because the Plaintiff had previously dismissed trademark claims against Defendants RKR Beverage and Chad Robello in the state court trademark action.

The claims are asserted against all Defendants in six substantive counts:  infringement and unfair competition [43(a)] under the Lanham Act, common law infringement/unfair competition, violation of FDUTPA

(§501.201, Fla. Stat.), tortious interference with a business relationship, and trade slander (styled as "defamation").

According to the allegations, the Sandshaker Lounge has been known colloquially as "The Shaker" to locals for decades, but it was not until after Defendants opened THE SHAKA BAR in 2013 did the Plaintiff seek in 2015 and later obtain federal registration for SHAKER (Complaint, Ex. B). Therefore, the claim for infringement depends largely on the common law rights in effect when the Shaka Bar opened on or after May 29, 2013. First Amended Complaint, ¶16 (references to the First Amended Complaint are hereinafter "¶ __"). Defendants ASP and Rodney Robello were not parties to the state court litigation.

### Allegations

The Plaintiff operates a large night-club or bar known as the Sandshaker Lounge aka "The Shaker" located one-half mile from Defendant RKR's small seasonal bar[1] known as "The Shaka Bar" which (as noted by the state court judge in the order denying Plaintiff's "emergency" motion for temporary injunction [dkt. 15]), essentially consists of a Hawaiian themed outdoor tiki bar with less than 20 seats located outdoors on the back outside wall of the Aloha Wine & Liquor store on Pensacola Beach

---

[1] The Shaka Bar operates under a seasonal permit from the Santa Rose Island Authority (SRIA) from May to October.

Boulevard operated by RKR Beverage. The state court judge heard testimony and made findings of fact in the order denying the injunction. See Dkt #15, Ex 2, Order Denying Motion for Preliminary Injunction included within request for Judicial Notice of State Court Proceedings.

The owners of Aloha Screen Printing are Rodney (Lopaka) and Chad (Kaipo) Robello. They are of Hawaiian descent which is largely the reason they chose the name Aloha Wine & Liquor and then years later RKR Beverage opened The Shaka Bar on the back porch of the liquor store. See Request for Judicial Notice, "Order Denying Emergency Motion for Temporary Injunction" [dkt # 15]. The Shaka symbol  or hand gesture (middle fingers curled, thumb and forefinger extended) was created in Hawaii and means "hang loose" or can be used to communicate "hello" and "goodbye" or assent and approval. The affidavit of Dr. Isaiah Walker was filed in the state court action and is attached here. See Ex. A. [2] The Court may take judicial notice of the fact that a) the Shaka sign or symbol is well known across the world and b) conveys the expression "hang loose," or among some it can be used to signal assent, approval or affirmation. The Plaintiff contends its registered mark SHAKER and a

_____

[2] The origin and connotative meaning of "Shaka" is discussed at length in the affidavit of Dr. Isaiah Walker filed in the state court action in opposition to the Plaintiff's Motion for Temporary Injunction which was denied. A copy of the Affidavit of Isaiah Walker appears here as Exhibit A. This affidavit was filed in the state court and may be judicially noticed without transforming this motion into one brought under Rule 56.

common law mark THE SHAKER BAR are infringed by Defendant's use of THE SHAKA BAR. The allegations against Aloha Screen Printing are based on its alleged contributory infringement and/or participation in the alleged infringing activities.

The allegations against Aloha Screen Printing sound in contributory infringement and the facts supporting other alleged torts are sparse. The Plaintiff alleges only that Aloha Screen Printing produces *unidentified* advertising materials for Aloha Wine & Liquor [RKR Beverage] and "The Shaka Bar" ¶ 20. Aloha Screen Printing's place of business is Gulf Breeze, Florida. RKR operates Aloha Wine & Liquor at two locations: on Pensacola Beach Blvd, and on Gulf Breeze Parkway in Gulf Breeze. ¶ 12. The Shaka Bar is located behind the Aloha Wine & Liquor store on Pensacola Beach. ¶ 13.  The Robellos are alleged to use the marquee and signage at the location shared by Aloha Screen Printing and Aloha Wine & Liquor in Gulf Breeze, Florida, to advertise and promote "The Shaka Bar" ¶21. No signage from the Gulf Breeze location is alleged or depicted in exhibits.

Plaintiff alleges the Defendants (collectively) were aware that the Plaintiff had advertised under the name "The Shaker Bar" in magazines, newspapers and billboards. ¶ 24.  The Defendants collectively are alleged to have conceived a scheme of simulating [by means unknown] Plaintiff's tradename to confuse and deceive the public. ¶ 28.   The Defendants

allegedly employed Aloha Screen Printing to develop a logo, signage, and t-shirts or other merchandise designed to be similar to the marks used by the Plaintiff. ¶ 29.  None of the merchandise or signage made by Aloha Screen Printing is depicted or described (see e.g., ¶ 29- 30). There is nothing attached to suggest the trade dress used by RKR and the Plaintiff is "indistinguishable" nor how ASP contributed to the infringement of trade dress, and indeed the state court found notable differences between the bars at the injunction hearing [Dkt #15, Ex. 2]. The exhibits are ponderous; a photograph of one marquee [aka reader board] attached to the First Amended Complaint as Ex. C reads:

THE SHAKA BAR

THE SHAKA BAR

THE SHAKA BAR

The sign is out front of the Aloha Liquor Store on Pensacola Beach Blvd.,  and there is no allegation it was created by Aloha Screen Printing even if it were actionable.  The Defendants (collectively) "prey on the good will and patronage of Plaintiff's customer base" by mimicking and copying "events" – presumably offering red beans and rice around Mardi Gras or Fat Tuesday. ¶ 34. Plaintiff alleges a cease and desist was sent but the letter attached is directed only to RKR Beverage and Chad Robello. Am. Comp., Ex. E.

Aloha Screen Printing is alleged to be liable for contributory infringement in Count I and II. See ¶48, 56. No mention is made of Aloha Screen Printing in Count III. Paragraph 62 in Count III refers only to the "bar facility" operated by Defendant, presumably meaning RKR Beverage. According to the Plaintiff, Defendants are offering "service and products" which are inferior to the experience the customer would receive at the Plaintiff's facility and not consistent with Plaintiff's advertisement and reputation. ¶ 62.

Count IV for violation of §501.201, et.seq. (FDUTPA) makes no specific reference to Aloha Screen Printing referring only to "Defendants". The same is true in Count V for tortious interference. Count VI for trade libel or "defamation" is ostensibly based on third party posts on social media pages ( ¶78, Ex. D and F). There are no publications squarely alleged to be authored by Aloha Screen Printing or any particular Defendant.   Plaintiff alleges the Defendants collectively have attempted to influence "event sponsors not [to] use the business of the Plaintiff". ¶ 35. Defendants collectively are alleged to have used social media to foster negative publicity to including [unspecified] derogatory and untrue comments about the plaintiff, and its owners.  ¶ 36.  No false statements are squarely identified as false much less attributed squarely to ASP.  One

is left to guess what "derogatory and untrue" comments are at issue and who published them?

The unfettered use of the word "Defendants" is clearly problematic. Allegations suggest "Defendants" host a Facebook forum entitled "Defend the Shaka Bar" and directing its patrons, friends and the general public to "make comment". There is no allegation to reveal what "directing" by Aloha Screen Printing occurred nor that Aloha Screen Printing ("ASP") controlled the Facebook page. There are unspecified "libelous statements" on social media. ¶ 78, Ex. D and F.

Exhibit D is an advertisement for free red beans and rice. The relevance to ASP is unclear. Maybe this is the "mimicked" event referenced in ¶ 34, but this is it actionable. The second page of Ex D appears to be a post on social media, again not alleged to be a publication or hosted by Aloha Screen Printing. Ex. F appears to be a post by non-party Chad Colquett, again on a Facebook or social media page of unspecified relevance to Aloha Screen Printing.

Count IV asserts a FDUTPA claim under §501.201 et. seq. incorporating by reference the same allegations underlying the trademark infringement allegations found in Counts I-III (¶ 1-40). Under this statutory theory Plaintiff seeks damages for infringement or deceptive practices including "loss of events, customers and the resulting revenues a loss of

goodwill and business relationships resulting from the acts of Defendants" ¶ 68. ASP is not mentioned and it is unclear whether this Count is directed to ASP.

Count V for tortious inference lacks allegations of time and place and circumstances surrounding the damages flowing from interference with "local charity and community groups" who "desire to host events" at Plaintiff's bar. (¶¶ 70-72). There is no allegation that such groups were confused or misled into booking events with the Defendant ASP. Other than contributory infringement (which is only specifically alleged in Counts I and II) it is not clear what conduct *attributable to ASP* amounts to tortious interference with groups or business opportunities. Plaintiff confusingly includes trademark related allegations suggesting harm to the goodwill associated with its marks and logos. (¶72) in the claim for tortious interference. Intentional and unjustified acts of interference are mere legal conclusions (¶ 73). Curiously in the "Wherefore" clause following ¶73 the Plaintiff seeks "disgorgement of profits made by the Defendants" together with attorney's fees and costs. The basis for attorney's fees is not alleged. There are no meaningfully clear allegations to determine what activities generated the "profits" that are sought to be disgorged from any or all of the individual or corporate Defendants separate and apart from the alleged infringement.

The trade libel claim in Count VI under state law consists of third party posts on social media pages (Complaint, ¶38, Ex. D & F) and posts on what appears to be a Facebook forum (¶ 77). The author of the posts is not alleged. One unidentified person posted his or her dislike of the Plaintiff, posting on social media, "the Shaker is not a part of Pensacola Beach. It's nothing but a rundown bar that cares nothing for the community and should be avoided by all". Ex. D.  Other exhibits appear to involve posts by a non-party Chad Colquett. See Ex F. Nonetheless, the Plaintiff alleges that unidentified friends and supporters of the Shaka Bar posted unspecified "derogatory and untrue statements" about the Plaintiff and its owners. ¶38. These alleged false statements of fact are unknown; although opinion or commentary is not actionable, Plaintiff does not squarely allege any such statements to have been published by ASP. Count VII is merely a claim for injunctive relief against all Defendants.

**Procedural History**

In the prior state action, the Plaintiff filed a Motion for Preliminary Injunction on April 22, 2016.   ASP was not a party. The Motion for Preliminary Injunction in the state action was set for an all day evidentiary hearing on December 14, 2016, some 13 months after suit was filed and more than three years after Defendant RKR opened  The Shaka Bar on or after May 29, 2013. ¶16.  The state court denied the "Emergency" Motion

for Temporary Injunction in a written order. See Request for Judicial Notice of State Court Proceedings [dkt 15].  On the eve of the expert disclosures required in state court, Plaintiff filed a notice of voluntarily dismissal in state court on September 15, 2017, and re-filed—that same day—the claims in federal court asserting infringement and dilution claims, and for the first time adding state claims for violation of FDUTPA, trade libel, tortious interference and Rodney (Lopaka) Robello and Aloha Screen Printing as party defendants. The First Amended Complaint in this action is not meaningfully different from the original except the state dilution claim under Chapter 495, Fla. Stat.,  has been omitted.

[NOT SURE IF WE WANT TO ADD A BRIEF PARAGRAPH ABOUT ASP'S PREVIOUS MTD JUST TO REITERATE THAT THESE ISSUES WERE RAISED BEFORE AND NOTHING WAS DONE]

As noted above, Aloha Screen Printing, along with the other Defendants, moved to dismiss all counts of the original Complaint filed by Plaintiff [dkt# 13], arguing dismissal was warranted for the following reasons: (1) the pleading defects at large; (2) Plaintiff's failure to indicate which causes of action were being asserted against each Defendant; (3) Plaintiff's use of the word "Defendants" without specifying which defendant was being referenced; (4) Plaintiff's failure to specify what conduct of Aloha Screen Printing, if any, formed the bases for various claims; (5) Plaintiff's

failure to identify any acts of contributory infringement applicable to Aloha Screen Printing or the alleged marks used by Aloha Screen Printing; (6) there is no valid cause of action under FDUTPA; and (7) Plaintiff's failure to state a cause of action for tortious interference, trade libel ("defamation") and injunctive relief.   Despite being placed on notice of these various issues, Plaintiff's First Amended Complaint is largely unchanged. Consequently, Aloha Screen Printing seeks dismissal of the First Amended Complaint for essentially the same reasons previously detailed.

## II. <u>Pleading Standard</u>

A complaint must contain sufficient factual matter, which, accepted as true, states a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A plaintiff does not state a claim for relief by offering mere "labels and conclusions," "formulaic recitations of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."   *Id*.   Pleadings which thwart the ability of each defendant to properly frame a response and poorly pled complaints generally impede the Court's ability to analytically gauge whether the merits are subject to challenge. *Cream v. Iver,* 2015 U.S. Dist. LEXIS 60595 at * 7 (M.D. Fla. 2015)(discussing shotgun pleading tactics) citing *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F. 3d 955, 980 (11th Cir. 2008). This allegations mirror those in *RR Games*, where the Middle District noted "the

Amended Complaint appears to assert claims for direct trademark infringement, contributory trademark infringement, and conspiracy in one count titled 'Federal Trademark Infringement," making it difficult to discern what claims R&R is asserting against each Defendant. This is a hallmark of a 'shotgun' pleading, and R&R  is required to replead its claims in a manner consistent with the Federal Rules of Civil Procedure". *RR Games v Fundex Games, Ltd.*., 2013 U.S. Dist. LEXIS 28426 at *31-32 citing  *Ledford v Peeples,* 657 F.3d 1222, 1239 (11th Cir. 2011).

   The orderly, efficient and economic disposition of disputes is frustrated by sloppy or shotgun pleadings.  *Id.*  Rule 8(a)(2) requires that the plaintiff not only provide fair notice of the nature of the claim, but also 'grounds' on which the claim rests.  *Twombly*, 550 U.S. at 556 n.3.  Legal conclusions without factual support are entitled to no assumption of truth. Only when there are well-pleaded factual allegations, should a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Cream v McIver,* 2015 U.S. Dist. LEXIS 60595 at *4-5 (M.D. Fla. 2015) and cases cited therein; *Iqbal*, 556 U.S. 679.

   The Court may consider matters judicially noticed. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n.16 (11th

Cir. 2001). The First Amended Complaint may not be a true shotgun complaint where each count is incorporated into each successive count, but this is a firehose pleading where all of the parties are showered indiscriminately with the same 40 initial paragraphs, and there is virtually no delineation of parties and facts rendering each count flawed.

Rule 9(g) requires that lost profits and special damages be pled with specificity and the First Amended fails to do so.

## III.   **Outline of Argument**

    A.    Defects common to Counts I - III

    B.    No Claim for Actual Damages is Cognizable under FDUTPA (§501.211(2))

    C.    No Tortious Interference Properly Alleged

    D.    No Defamation Properly Alleged

    E.    Attorney's fee claims in Counts V and VI due to be stricken

    F.    Injunctive relief is a remedy not a cause of action

### A. Defects common to Counts I - III

There is no effort to indicate which causes of action are asserted against each of the four Defendants. The same forty introductory paragraphs apply in firehose fashion to each cause of action yet within them are a variety of disparate allegations that apply to infringement, defamation, deceptive trade practices and trade dress. Compare e.g., ¶¶

27, 28, 30, 33, 37, 38. Trade dress allegations are sprinkled throughout (e.g., ¶ 27, 33) but there is no count so named. The theories in each count are muddled and non-specific. Allegations of contributory infringement against ASP are blurred with conduct attributable to all "Defendants".

The fundamental purpose of Rule 8 is to apprise *each Defendant* of the claims being asserted against it. Rule 12 was designed to insure compliance with Rule 8. All counts are muddled and in particular Counts IV-VI suffer from a paucity of meaningful facts. *Cream*, 2015 U.S. Dist. LEXIS 60595 at  *7-8 ("the Complaint does not set forth the claims against the Attorney Defendants in separate counts, nor does the Complaint specify how each individual Attorney Defendant is alleged to have violated the statutes at issue").

Allegations of contributory infringement in Counts I and II are but legal conclusions (¶48, 56). No infringing products made by ASP are identified. No marks or logos on t-shirts, signage or other merchandise are alleged and available for comparison by the Court.  There are no allegations  of protected trade dress and the use of The Shaker mark in commerce in comparison to t-shirt for The Shaka Bar are not described nor revealed in exhibits.

Whether firehose or "shotgun" pleading, and Plaintiff is required to plead its claims in a manner consistent with the Federal Rules of Civil

Procedure." *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 U.S. Dist. LEXIS 28426, *31-32 (M.D. Fla. Feb. 28, 2013) citing *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011). The allegations of Counts I-III fall woefully short of these requirements. In addition, the trade dress allegations should be stricken. Unregistered trade dress requires secondary meaning and courts will dismiss such claims when there are no facts alleged or exhibits attached to demonstrate the distinctiveness or requisite level of fame attendant to the trade dress. *Knights Armament v Optical Systems Tech.*, 568 F. Supp. 2d 1369, 1376   (M.D. Fla. 2008)(dismissing trade dress and unfair competition claims where "OSTI did not provide a physical representation of the allegedly infringing trade dress to the Court"). *Christrikes Custom Motorcycles, Inc v Teutul,* 2016 U.S. Dist. LEXIS 80502 at * 11 (M.D. Fla. 2016).  A district court may take judicial notice of the meaning of  the "Shaka symbol" and court documents from the state court without converting a motion to dismiss into a motion for summary judgment. *Lozman v City of Riviera Beach*, 713 F. 3d 1066, 1075 n. 9 (11th Cir. 2013).

In light of the foregoing, Counts I-III are due to be dismissed.


## B. No Cause of Action Exists Under FDUTPA (§501.201 *et. seq.*)

The argument raised by RKR and the Robellos in support of dismissal of Count IV is equally applicable here and will not be duplicated for sake of brevity.  Cases with an expansive interpretation include older decisions such as *Factory Direct Tires v Cooper Tire & Rubber Co.,* 2011 U.S. Dist. LEXIS 159599 (N.D. Fla. 2011),  and *Tracfone Wireless v Access Telecom,* 642 F. Supp. 2d 1354 (S. D. Fla. 2009) for the proposition that competitors may sue one another under FDUTPA for past lost profits but that lost *future* damages are consequential losses not recoverable under Chapter 501). Recent cases and discussion of legislative history call into question the continuing vitality of the past/future profits distinction in *Factory Direct Tires*. Immediately following the 2001 Amendments to Chapter 501 there was some jurisprudence (like *Factory Direct Tires*) leading attorneys to use Chapter 501 as the state equivalent of the Lanham Act by judicial fiat.  This proved problematic for several reasons. That tide has turned and one court has noted the majority of decisions now recognize that Chapter 501 does not permit competitors to sue for lost profits because lost profits are consequential not "actual damages". See *Gibson v Resort at Paradise Lakes, LLC*, 2017 U.S. Dist. LEXIS 125980 at * 13-14   (M.D. Fla. Aug. 9, 2017)(discussing conflicting authorities and legislative history of Chapter 501); *ADT, LLC v Vivint, Inc.,* 2017 U.S. Dist.

LEXIS 123516, *12 (S.D. Fla. Aug. 3, 2017)(no cause of action for lost profits under FDUTPA).

Later courts have more closely examined the legislative history and limited affect of the 2001 Amendments noting also the requirement of "consumer injury". Changing the word "consumer" to "person" in Section 501.211(2) was <u>not</u> intended to create a whole new spate of claims co-extensive with the Lanham Act. *Id.* Importantly, the Defendants are not arguing "corporations cannot be consumers" as that argument is long since defeated. The argument here is that 1) lost profits and injury to reputation are not recoverable actual damages and 2) in the absence of "consumer" injury, relief under FDUTPA is not available. The emphasis is on the nature of the injury being non-actionable—not the plaintiff's *corporate* status.

*Taft v Dade County Bar Assn*., 2015 U.S. Dist. LEXIS 134798 (S. D. Fla. 2015); *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 59558 (S.D. Fla. April 25, 2013) and  importantly *ADT, LLC v Vivint, Inc.,* 2017 U.S. Dist. LEXIS 123516, *12 (S.D. Fla. Aug. 3, 2017) teach that lost profits are not actual damages and the absence of consumer injury renders FDUTPA unavailable. *Rollins v Butland,*  951 So. 2d 860, 868 (Fla. 2d DCA 2006)( a "deceptive" practice is one that is likely to *mislead consumers* and an "unfair" practice is one that is immoral, unethical or *substantially injurious to consumers*.  While corporations can

be "consumers" by virtue of the 2001 Amendments, they must still have an *injury* within the ambit of §501.203(7) and "actual damages". See *Gibson; Taft; Pinecrest Consortium* and *Rollins*. Chapter 501 should not be converted into a mini-Lanham Act when it already expressly mirrors the rulings of the FTC by statutory mandate. See §501.203(3), Fla. Stat (2013). The legislature did not intend to afford Lanham Act protection through Chapter 501 when originally enacted or amended in 2001.

The *ADT v Vivint* court rejected any distinction between past and future lost profits in dismissing the monetary damages claim under FDUTPA. 2017 U.S. Dist. LEXIS 123516, *11-12 (S.D. Fla. Aug. 3, 2017). In *BPI Sports* the Southern District similarly noted that competitive harm, diverted lost sale and harm to reputation are consequential not "actual damages". 2016 U.S. Dist. LEXIS 23033, at * 17 (S. D. Fla. 2016). *Gibson, ADT v Vivint,* and *BPI Sports* inform that lost profits and reputational harm are a species of consequential damages and are not "actual damages." Lost profits of any sort are the "quintessential form of consequential" loss or damage. *BPI Sports*, 2016 U.S. Dist. LEXIS at *17-18 and cases cited therein. Although conflicting case law abounds,  the greater weight of reasoned authority is consistent with the defense position.  *Gibson* at * 13*; Taft v Dade County Bar Assn*., 2015 U.S. Dist. LEXIS 134798 at * 9 (S. D. Fla. 2015).   The purpose of the 2001 amendment was to clarify that

remedies available to individuals under the FDUTPA are also available to businesses. *Id.* (citing House of Representatives Committee on Agriculture & Consumer Affairs Analysis, HB 685, March 12, 2001, page 4; Senate Staff Analysis and Economic Impact Statement, CS/SB 208, March 22, 2001, pages 3-4); *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 59558 (S.D. Fla. April 25, 2013) (citing *H&H Restaurants, LLC,* 2001 U.S. Dist. LEXIS 24038, at *9 (S.D. Fla. 2001) (no action will lie under Chapter 501 absent consumer related injury).  Had the Legislature intended for any form of commercial loss or damage to be recoverable under FDUTPA it would not have added the word "actual" to "damages". *ADT v Vivint; BPI Sports*, supra; Section 501.211(2), Fla. Stat.

Defendant is constrained to acknowledge conflicting authority abounds within the Northern, Middle and Southern Districts but the recent decisions in *Gibson v  Resort at Paradise Lakes* and *ADT v Vivint* and an analysis of legislative history warrants reconsideration of the more expansive interpretations of FDUTPA found in *Factory Direct Tires* and older Northern District decisions.

FDUTPA is used and abused by commercial litigators (at least until *Gibson*) as a tool for Plaintiffs to recover attorney's fees against economically disadvantaged defendants because the attorney's fee provision in FDUTPA is more easily satisfied than the "exceptional

circumstances" requirement for attorney's fees under the Lanham Act. While a restaurant or bar can be a consumer there is no "consumer injury" inflicted by ASP. *Rollins v Butland; Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 59558 (S.D. Fla. April 25, 2013) (citing *H&H Restaurants, LLC,* 2001 U.S. Dist. LEXIS 24038, at *9 (S.D. Fla. 2001) (no action will lie under Chapter 501 absent consumer related injury).

Count IV is poorly pled against Aloha Screen Printing and subject to dismissal. No actual damages are alleged under FDUTPA and allegations of damages in the form of loss profit or reputational harm are not recoverable in Count IV.

### C. No Valid Claim for Tortious Interference

To establish a claim for tortious interference with an advantageous business or contractual relationship alleged in Count V, a party must allege and prove: (1) the existence of a business relationship or contract; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with that relationship by the defendant which induces or otherwise causes nonperformance; and (4) damages resulting from the tortious interference. *Ibp, Inc. v Hady Enterprises,* 267 F. Supp. 2d  1148, 1164, (N.D. Fla. 2002)*; Border Collie Rescue, Inc., v Ryan*, 418 F. Supp. 2d 1330, 1343 (M.D. Fla.  2006) citing *Ethan Allen, Inc. v. Georgetown Manor,*

*Inc.,* 647 So. 2d 812, 814 (Fla. 1994). Tortious interference requires that the Plaintiff articulate some specific business opportunity or customer base beyond the general public. *Becker Designs, Inc v Biker Design, Inc.,* 2006 U.S. Dist. LEXIS 102278 at * 6 (M.D. Fla. 2006). The speculative hope of future business is not sufficient. *St. Johns River Water Management Dist. V Fernberg Geological Services, Inc.,* 784 So. 2d 500, 505 (Fla. 5th DCA 2001).

Plaintiff's allegations coming after two years of state court litigation are vague and conclusory. Plaintiff curiously suggests that local charities or community groups "desire to host events" at the business of the Plaintiff, but there is no allegation that specific business was lost due to reliance on false statements or tortious, i.e., wrongful, interference. ¶ 71. Causation is wholly lacking. Allegations of tortious interference echo infringement claims (see e.g., ¶ 72 ("identity to the logos and trademarks developed by the Plaintiff"). If local businesses viewed the state court action as bullying and are upset by the Plaintiff's attempt to enjoin The Shaka Bar, this cannot be reframed as interference by Aloha Screen Printing. There is no factual allegation to support a fair inference that ASP purposefully and unjustifiably obtained some commercial advantage. Tortious interference with a "business relationship" requires one to articulate a relationship with some identifiable party or group and a basis to believe that but for interference it

would have continued. *Ethan Allen, supra.* There are no times, dates, or circumstances alleged. ¶ 71. The alleged interference appears to be nothing other than backlash from bringing the suit initially against RKR in state court and  attendant social media commentary by third parties who are no fans of the Plaintiff's bar. Ex. F.  The injury appears self-induced by virtue of public reaction to filing the lawsuit against RKR in state court. *Id.* Competing for business and seeking to influence sponsors in advertising or promotion (¶ 35) is permitted competition not actionable interference. The Plaintiff's own allegations suggest it is regarded as a bully by locals (Ex. F), which inferentially suggests that ASP is not the cause of any direct loss by unjustified and tortious interference. Count V fails to state a cause of action against ASP.

### D. Trade Libel Claim Due to Be Dismissed

The defamation or trade libel claim is particularly problematic, as the alleged false speech is not identified and the exhibits to the Complaint fail to identify a Defendant/speaker and false message.  Plaintiff purports to bring a claim under "Florida Statutes § 770" - presumably a reference to the retraction statute, §770.01 – 770.07, Fla. Stat. (2013).  See ¶ 78. One cannot tell what false facts could or should be retracted even if the statute was applicable to these parties.  Chapter 770 does not create, nor does it support an independent cause of action.

To state a valid claim of trade libel, plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages proximately caused as a result of the published falsehood. *Ibp, Inc. v Hady Enterprises,*  267 F. Supp. 2d 1148, 1163 (N.D. Fla. 2002); *Border Collie Rescue, Inc. v Ryan,* 418 F. Supp. 2d 1330, 1348  (M.D. Fla. 2006).  Vituperative insults and opinions are not actionable. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996) (rhetorical hyperbole is not actionable; whether the statement is a non-actionable expression of pure opinion or an actionable expression of pure fact is a question of law for the Court). Whether  a statement is defamatory is a threshold question of law. *Colodny; Ibp,* 267 F. Supp. 2d at 1163; *Nodar v. Galbreath,* 429 So.2d 715 (Fla. 4th DCA 1983); *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 56 (Fla. 1st DCA 1981); Context is key—otherwise one cannot tell whether a qualified privilege exists under *New York Times v Sullivan* or common law. The application of a privilege or defense apparent from the face of the pleadings presents a question of law the court may decide on a motion to

dismiss. *From* at 56*;  Huszar v. Gross*, 468 So.2d 512, 516 (Fla. 1st DCA 1985).

The face of the amended complaint does not make clear who is responsible for what. See *Cream, RR Games*, *supra*. Rule 8 and 10 work together to require the pleader to present his claims discretely and succinctly so that his adversary can discern what he is claiming and frame a responsive pleading and so the Court can determine what facts support which claims. *Fikes v City of Daphne*, 79 F. 3d 1079, 1082 (11th Cir. 1996).

Page one of Composite Ex. D references a red beans & rice. Page two of Ex. D is not clearly identified but appears to be a Facebook post or text event. There are references to "Kaipo Robello" on the same page, but there is no allegation that the offending  post was from Chad Kaipo Robello, nor does it does not contain false facts concerning the Plaintiff. The author of the statement, "The Sandshaker doesn't care about you, me or anyone else on the island. It's all about money" is not identified and, without more, is non-actionable opinion. The Plaintiff does not allege that page 2 of Ex. D is attributable to ASP.  See ¶¶ 34 and 38, Ex. D.  ASP cannot tell what false statements in ¶77 are meant to be asserted against it.

Plaintiff fails to identify who is responsible for Exhibit D.  Exhibit F is a post ostensibly  by Chad Colquett who is not alleged to have any

relationship to these Defendants. The statement "#yourmilkshakessuck (referring to the Plaintiff's "Bushwacker" drink in ¶ 62) is obviously opinion and not fact. The same is true for "out-dated beach bar" which is not actionable even if it could be rightfully attributed to ASP.  The context of Ex. F suggests that the speaker (Colquett) is commenting on the existence of the state court lawsuit ("a rift on our beach that a bully initiated").

Trade libel (and arguably tortious interference alleged in Count V) requires allegations of special damages under *Ibp* and *Border Collie Rescue*,  and, as such, a heightened pleading standard attaches under Rule 9(g).  Rule 9(g) is not satisfied by conclusorily alleging that statements were prejudicial to one's business and caused pecuniary harm. See *Nat'l Numismatic Certification, LLC v eBay, Inc.* 2008 U.S. Dist. LEXIS 109783 at * 60 (M.D. Fla. 2008). It is necessary for the plaintiff to allege either the loss of particular customers by name or a general diminution in its business and extrinsic facts showing that such special damages were the natural and direct result of the false publication. *Nat'l Numismatic Certification* at * 61-62; Rule 9(g).

There are no allegations in the First Amended Complaint describing any alleged false statements in ¶ 78 made by Aloha Screen Printing or its agent, nor are there any specifically pled damages that are attributable to those statements.  ¶¶ 75-78. Count VI is due to be dismissed.

### E.    Attorney's fee and apology claims in Counts V and VI due to be stricken

The basis for claiming attorney's fees is not alleged and therefore the claims for attorney's fees are due to be stricken from Counts V and VI. Attorney's fees are not available under Florida law for common law claims of tortious interference or common law trade slander. The relief sought includes an apology and retraction. See Am. Comp. pg. 15. There is no equitable remedy of "apology" in the common law and at least one court noted the absence of authority to establish prior retractions compelled by court order. *Berman v Kafka*, 2015 U.S. Dist. LEXIS 184658 at *6 (M.D. Fla. 2015)(citations omitted).

### F.    Injunctive relief is a remedy not a cause of action

Count VII is merely a claim for injunctive relief. This is a remedy not a cause of action. This count is duplicative and is generally subsumed within any viable Count not otherwise dismissed.

### Conclusion

Despite a previously filed motion to dismiss, no effort was made by Plaintiff in the First Amended Complaint to cure the vagueness, lack of specificity and other legal defects in Count I through III. Contributory infringement is not revealed nor is any advertising or promotional

merchandise or signage offered for comparison. Allegations under FDUTPA fail to allege consumer injury and actual damages under *Gibson* and *ADT v Vivint.* Consequential damages are not recoverable under FDUTPA. *Id.* Acts amounting to actionable trade libel and tortious interference by ASP and special damages are not specifically alleged. *Nat'l Numismatic Certification, LLC v eBay, Inc.* 2008 U.S. Dist. LEXIS 109783 at * 60 (M.D. Fla. 2008). Damages from state law tort claims is not apparent nor distinguishable from whatever alleged injury flows from the trademark infringement or Lanham Act claims.

Wherefore, Aloha Screen Printing request the Court dismiss all counts in the First Amended Complaint, strike claims for attorney's fees not supported by statute, and  provide such other relief as this Court deems just.

## Certification of Word Count

Pursuant to NDLR 7.1 (F) the undersigned certifies that the word processing system reflects 6,318 words inclusive of heading, footnotes and quotations.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 5,  2018,  I electronically filed the foregoing with the Clerk of the Court, which will send a notice of electronic filing to the email address for **Robert O. Beasley, Esquire**,

Litvak, Beasley, Wilson & Ball, LLP, 226 East Government Street,

Pensacola, FL 32502, **rob@lawpensacola.com; joy@lawpensacola.com**

Respectfully submitted,
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN, P.A.


DAVID W. HENRY, ESQUIRE
Florida Bar No.: 765082
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
315 E. Robinson Street, Suite 550
Orlando, FL 32801
Telephone: (407) 420-4380
Facsimile:  (407) 839-3008
E-mail: dwhenry@mdwcg.com
            jataylor@mdwcg.com

MICHAEL K. KIERNAN
Fla. Bar No.: 391964
ASHLEY K. KELLGREN
Fla. Bar No.: 86021
TRAUB LIEBERMAN STRAUS &
  SHREWSBERRY, LLP
First Central Tower
360 Central Avenue, Suite 1000
St. Petersburg, FL 33701
(727) 898-8100; (727) 895-4838 (Fax)

Attorneys for Defendant Aloha Screen
Printing, LLC

LEGAL/114208882.v1

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

CASE NO.:   2015-CA-001969

SANDSHAKER LOUNGE &
PACKAGE STORE, LLC,

     Plaintiff,

v.

RKR BEVERAGE, INC.
a Florida corporation, and CHAD
ROBELLO,

     Defendant.

_____/

## DEFENDANTS, RKR BEVERAGE, INC. AND
## CHAD ROBELLO'S, NOTICE OF FILING

     Defendants, RKR BEVERAGE, INC. and CHAD ROBELLO, serve this, their Notice of Filing the following document in opposition to Plaintiff's Motion for Temporary Injunction set for hearing on Monday, December 12, 2016:

     1.     Affidavit of Isaiah Walker, Ph.D. in Opposition to Motion for Preliminary Injunction.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on December 6, 2016, I electronically filed the foregoing with the Clerk of the Courts by using E-Portal, which will send a notice of electronic filing to the following:  **Robert O. Beasley, Esquire/Phillip A. Pugh, Esquire**, Litvak, Beasley, Wilson & Ball, LLP, 226 East Government Street, Pensacola,

FL        32502,        **rob@lawpensacola.com;**        **pap@lawpensacola.com**;

**joy@lawpensacola.com**.


_____/s/ David W. Henry_____
DAVID W. HENRY, ESQUIRE
Florida Bar No.: 765082
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
315 E. Robinson Street, Suite 550
Orlando, FL 32801
Telephone:   (407) 420-4380
Facsimile:    (407) 839-3008
E-mail: dwhenry@mdwcg.com
         kahewitt@mdwcg.com
Attorney for Defendants

LEGAL/108063205.v1

IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

CASE NO.:   2015-CA-001969

SANDSHAKER LOUNGE &
PACKAGE STORE, LLC,

      Plaintiff,

v.

RKR BEVERAGE, INC.
a Florida corporation, and CHAD
ROBELLO,

      Defendant.

_____/

## <u>AFFIDAVIT OF ISAIAH WALKER, PH.D. IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>

STATE OF HAWAII         )
                           )
COUNTY OF HONOLULU    )

Personally appeared before me, the undersigned authority, Isaiah Walker, Ph.D., who after being duly cautioned and sworn, deposes and says as follows:

1.      I was born and lived the majority of my life in Hawai'i (commonly spelled Hawaii).   I am an Associate Professor at Brigham Young University-Hawaii where I serve as the Chair of the Department of History.   I have a doctoral degree in history from the University of California, Santa Barbara for which I completed a dissertation on Hawaiian culture and history from a surfing perspective.   My dissertation was titled "North Short Reign: The Hui 'O He'e Halu and Surfing Borderlands of Hawai'i".   I also

have a masters degree with an emphasis on Hawaiian history and literature from the University of Hawaii at Manoa.

2.      In addition to my dissertation, I have published (as reflected in my CV attached) an award winning book and numerous peer reviewed articles focusing on Hawaiian culture and history from a surfing perspective.   I also have published a number of other writings on the subject, spoken at many conferences on the subject, contributed to an ESPN biography and other media on the subject, and consulted with a number of journalists on matters related to Hawaiian culture and surfing.   A true and correct copy of my *Curriculum Vitae* is attached as **Exhibit "A"**.

3.      The  "Shaka" sign originated in the early 1950s on the North Shore of Oahu with a Hawaiian fisherman and surfer named Hamana Kalili. Since the late 1960s, the Shaka handsign was proliferated by Hawaiian politicians, celebrities, and surfers. Over the last 50 years, the Shaka (the word and its accompanying hand gesture) has been popularized in television, movies, sports, commercial advertisements, and other media venues.  Although the Shaka is an iconic symbol for Hawaii's people and culture, it has also become a popular global phenomenon made by famous individuals with Hawaii connections—people like President Obama, Kelly Slater, Dwayne "The Rock" Johnson, and many more.

4.      The word "Shaka" has over the period of decades evolved to mean many endearing things including: aloha, welcome, hello, good bye, take care, sorry, and "hang-loose." The shaka symbol (three middle fingers curled, pinkie and thumb extended) is often used in conjunction with the notion of "hang loose"—which references a relaxed, laid back, beach and surf culture vibe.  For decades the Shaka

2

symbol and word has been considered (among members of the public) synonymous with this "hang loose" vibe including uses associated with Hawaiian tourist attractions and venues that promote a comfortable and welcoming environment. Thus, the shaka symbol has evolved to also connote a relaxed beach and surf environment for many people that is consistent with the theme and visual aesthetic of THE SHAKA BAR as revealed in photos of the bar operated by RKR Beverage and furnished for my review.

5.     The term "Shaka" is represented by the hand signal of the thumb and pinkie extended with the three middle fingers curled forward. This is the symbol which is seen on the bar countertop at The Shaka Bar, on The Shaka Bar's flyers, on signs posted at The Shaka Bar, and on shirts sold by The Shaka Bar.  See attached **Composite Exhibit "B"**.

6.     Throughout Hawaii, and in surfing cultures elsewhere in the United States and abroad, the term "Shaka" is regularly used for personal and business purposes. Many Hawaiians commonly use the term or use the hand symbol and gesture as a symbol in conversation to mean a variety of things including "hello," as a gesture upon departing (goodbye), or as a sign of agreement, assent or approval.

7.     A review of publically available information from the online domain Hawaii.gov (https://portal.ehawaii.gov) reveals that there have been more than twenty six (26) corporations, seventy three (73) limited liability companies, and eight (8) partnerships registered in Hawaii which have the word "Shaka" in their name.  A list of these corporations, limited liability companies, and partnerships is attached as **Composite Exhibit "C"**.

8.    I am personally aware of more than 10 businesses within Hawaii which use the word SHAKA in their name, including coincidentally my own relatives, the Tejada family, who run an electrical and contracting company called Shaka Braddahs. Their company uses a stylized version of the iconic hand gesture in their company logo.

9.    A review of publicly available information from the online domain SunBiz.com (http://search.sunbiz.org/Inquiry/CorporationSearch/ByName) reveals that there have been more than 41 companies registered in Florida which have the word "Shaka" in their name. A list of these companies is attached as Composite **Exhibit "D"**. SunBiz.com (http://dos.sunbiz.org/ficinam.html) also reveals that there have been more than 11 fictitious names registered in Florida which had the word "Shaka" in their name. A list of these registrations is attached as **Exhibit "E"**.

10.    I am also personally aware of the use of the term Shaka in numerous businesses outside Hawaii and elsewhere within the United States, especially those connected to surfing, the beach, or that seek to invoke a Hawaiian theme.

11.    I am also aware of a number of registrations with the United States Patent and Trademark Office for marks which include the term Shaka.   See attached Composite **Exhibit "F"**.

12.    I have reviewed the following records pertaining to The Shaka Bar and the allegations made in Plaintiff's Complaint against The Shaka Bar:

> 1.  Thirty nine pictures of The Shaka Bar
> 2.  Four pictures of The Sandshaker Bar
> 3.  Five registrations for marks which include 'shaka'

4

4. Complaint filed by Sandshaker Lounge & Package Store, LLC against RKR Beverages, Inc. and Chad Robello

13.     Based upon my academic study as reflected in my CV, a review of the above pictures and documents, and in light of my life experiences, education, and research, it is my opinion that the term Shaka in "The Shaka Bar" and the overall commercial impression of THE SHAKA BAR logo constitutes the use of the Hawaiian name and symbol in a manner consistent with its historical connotation.   Ordinary consumers viewing the word SHAKA as part of a service or trademark would not view it as an abbreviation for the word "Shaker" or as having some connection to the phrase "Shaker Bar."   "Shaka" is a commonly used word for a person of Hawaiian descent to use in naming their business as a culture reference to their Hawaiian heritage or desire to associate with Hawaiian or surfing culture.

14.     It is my considered opinion based on my research, review of historical records and treatises, and review of the photos and matters of record referenced above, as well as personal experience with Hawaiian culture, that there is no logical or connotative connection between the SHAKA BAR and the Plaintiff's "SHAKER" or "SHAKER BAR" trademark.   Based on my travels, study and experiences, I know that this connotative difference extends well beyond persons of Hawaiian descent as reflected in small measure by famous persons like President Obama and Dwayne Johnson's use of the Shaka hand gesture in public settings. The word "Shaka" and the hand gesture have a well-defined and accepted connotation, wholly separate from the word "Shaker" or any variant of the SHAKER mark.   There is to my knowledge no

5

reference to "Shaker" in Hawaiian culture and the connotative meaning of THE SHAKA

BAR and THE SHAKER BAR are wholly and completely dissimilar.


FURTHER AFFIANT SAYETH NOT.

Isaiah Walker, PhD

STATE OF HAWAII                    )
CITY *                             )
CITY COUNTY OF HONOLULU            )

The foregoing instrument was acknowledged before this ___1ST___ day        of
DECEMBER
our November 2016, by ISAIAH WALKER, who is personally known to me or who has

produced __A HAWAII'S DRIVERS LICENSE__ as identification and who did

take an oath and affirmed same.

CITY & COUNTY of HONOLULU,
WITNESS my hand and official seal at __LAIE__, HONOLULU COUNTY,
                                        our DECEMBER
HAWAII this __1ST__ day of November, 2016.


_____
Signature of Notary Public

Name: __COREEN WILLIAMS__
       (Notary Public)

My Commission Expires: __5|8|2017__

Document Date: 12|1|2016  # Pages: 6

Notary Name: Coreen Williams    First Circuit

Doc. Description: AFFIDAVIT of
ISAIAH WALKER

COREEN WILLIAMS  12|1|16
Notary Signature          Date

LEGAL/106671211.v1

**HISTORY**



## Dr. Isaiah Walker, PhD

Profession

*Associate*
*Professor*
*& Chair*

**Brigham Young University-Hawaiʻi, Department of History**
*Rank Advancement and Tenure: January 2012*
*Chair of the History Department since January 2011*

*Assistant*
*Professor*

**Brigham Young University-Hawaiʻi, Department of History**
*September 2006-January 2011*
Full-time, tenure-track position teaching World, Hawaiian, Pacific Island and United States history courses. Also served on various university committees

*Instructor*

**University of Hawaiʻi at Hilo**
*September 2005-June 2006*
Full-time, one-year contract, teaching: World history and the history of Pacific Islanders in America.

Education

*PhD*

**University of California, Santa Barbara, Department of History**
*Date Completed: August 2006*
*Dissertation Title:* "North Shore Reign: The Hui ʻO Heʻe Nalu and The Surfing Borderlands of Hawaiʻi" *Advisor:* Paul Spickard. *Fields of Study:* Hawaiʻi and Pacific Islands, Borderlands, Masculinity studies, Japanese Empire, Postcolonial film theory.

*Masters*

**University of Hawaiʻi at Mānoa, American Studies Department**
*December 2000, Emphasis:* American History and Literature, Hawaiian history and literature, and cultural studies.
*Advisor:* David E. Stannard

Publications

*Prize*
*Winning*
*Book*

***Waves of Resistance: Surfing and History in 20th Century Hawaiʻi***
(Honolulu: University of Hawaiʻi Press, 2011)
2014 Kenneth Baldridge book award recipient for best history book written by Hawaiʻi author between 2011 and 2014. Phi Alpha Theta History conference, UH Manoa.

*Peer*
*Reviewed*

"Kai Ea: Rising Waves of Hawaiian National and Ethnic Identities" Chapter in *Critical Surf Studies Reader* (Duke University Press, 2017)

BRIGHAM YOUNG UNIVERSITY HAWAII #1970 · 55-220 KULANUI STREET · LĀʻIE, HAWAII 96762-1294

(808) 675-3830 / FAX: (808) 675-3888 · URL: http://byuh.edu



**EXHIBIT**

A

tabbies

"Hui Nalu, Beachboys, and the Surfing Boarderlands of Hawai'i" *Contemporary Pacific*, 20.1 (2008).

"Terrorists or Native Protest? The Hui 'O He'e Nalu and Hawaiian Resistance to Colonialism" *Pacific Historical Review,* 74, no. 4 (Nov 2005).

*Other Articles*    "Swell of the 20[th] Century: Ancient swell maps depicted the intricacies of ocean waves" *Surfer's Journal*, 24.1 (February-March 2015).

*Online*    "Hawaiian National Pride at the ISA World Junior Championships" *the Inertia*, April 14, 2015. http://www.theinertia.com/surf/hawaiian-national-pride-at-the-isa-world-junior-championships/

*"Womentum: Rethinking the Women's Movement" the Inertia*, (July 2011) http://www.theinertia.com/surf/hawaiian-national-pride-at-the-isa-world-junior-championships/

*"Refuting the Bronzed Aussies" the Ineria (June 2011)* http://www.theinertia.com/surf/waves-of-resistance/

*Book*      *Review of "Empire in Waves: a Political History of Surfing" in*
*Review*     Journal *of Pacific History, 2015.*

## Media and Education

*Documentary*    "Hawaiian: Legend of Eddie Aikau" *ESPN 30 for 30 series*, 2013. Consulted as the Hawaiian and surfing historian for this film.

*Online*    Live Broadcast Commentator and Historian for the following events:
*Da Hui Backdoor Shootout (2015)*
*Women's Pipeline Pro (2014)*
*Dukes Oceanfest Waikiki (2014)*

*Radio*    "Surfing, History, and Colonialism in Hawai'i" *Deutchland Radio (German Public Radio).* Interview with Sebastian Meissner, Berlin Radio show on Hawaii history/surfing. http://www.deutschlandradio.de

*Nat. Geo.*    "Pure Hawaiian" *National Geographic* (February 2015). Interviewed and consulted with the author for this National Geographic article on Surfing and Hawaiian History.

*NY Times*    *"Rough Waves, Tougher Beaches" (January 22, 2009).* Interviewed and consulted for this NYT story.

Keynotes, Lectures, Papers

"Kai Ea: Rising Waves of Hawaiian National and Ethnic Identities" Presented at *Surfing Social Conference: Challenging Surfer Identities and Spaces* University of Waikato, New Zealand, February 2016.

"Surfing Is Still Hawaiian" Organized a panel of scholars from Hawaiʻi, to present at *Surfing Social Conference: Challenging Surfer Identities and Spaces* University of Waikato, New Zealand, February 2016.

"Halau Nalu" keynote for the *Public Health in Hawaiʻi Conference*, John Burns School of Medicine, August 2014.

"History and Culture of Surfing in Hawaiʻi" Keynote lecture for *Eia Lecture Series*, University of Hawaii, Hilo, November 2014. This was also streamed on live broadcast.

"Waves of Resistance" lecture/presentation given at *Salt of the Earth Conference*, UC Santa Cruz, November 2013. Funded and compensated by UC Santa Cruz.

"Waves of Resistance" Keynote lecture at *Arizona State University*, April 2012. Funded and compensated for this lecuture by ASU.

"Waves of Resistance" Keynote at annual Hawaiʻi History Phi Alpha Theta conference at University of Hawaiʻi, Manoa, March 2012.

"Surfing and History in 20[th] Century Hawaiʻi" *Hemispheric Souths Lecture Series*, University of California, Santa Barbara, 2012.

"Hui Nalu, Waikiki Beachboys, and Surfing Borderlands of Hawaiʻi" Presented at *Oceanic Popular Culture Conference*, Chaminade University, Honolulu, 2007

"Rewriting Colonial Masculinity on Oʻahu's North Shore" invited to give this paper at *Changing Pacific Masculinities/ Moving Masculinities,* Australia National University, Canberra, November 2005.

"Da Hui ʻO Heʻe Nalu: Contesting Imagined Boundaries of Pacific Masculinity in Hawaiʻi."paper given at *American Historical Association-Pacific Coast Branch,* Honolulu, Hawaiʻi, June 2003.

"Neither Passive, Nor Savage: Creating and Contesting Boundaries of Masculinity in Hawaiʻi." paper given at *Association for Asian American Studies*, San

Francisco, California, May 2003.

"Borders, Portals, and Hidden Passages: The Dynamics of Historical Identities."
Advanced Seminar at *School of American Research,* Santa Fe, New Mexico.
Paper written for seminar:  "Da Hui 'O He'e Nalu: Contesting Imagined
Boundaries of Pacific Masculinity in Hawai'i," March 2003.

"Neither Passive Nor Savage: Creating and Contesting Boundaries of
Masculinity in Hawai'i" paper given at *Race, Ethnicity, Nation Brown Bag*
UCSB History Department, October 2002.

"Representing Pacific Island Men with Contradicting Stereotypes" Paper presented at
*Race and Nation, Identity and Power: Ethnic Systems around the World* hosted
Interdisciplinary Humanities Center, University of California, Santa Barbara,
February 2002.


Fellowships & Scholarships

**Ke Ali'i Pauahi Foundation Fellowship**
Granted to Native Hawaiians for excellence in academic performance, 9/01-6/03

**University of California, Santa Barbara Department of History**
Full year TAship, GShip Fellowship, 9/02-present

Awards & Recognitions

2014 Kenneth Baldridge book award winner for best history book
written by Hawai'i author between 2011 and 2014. Phi Alpha Theta History
conference, UH Manoa.

Funded to present a paper at Moving Masculinities conference, in Canberra, Australia.
Funding provided by University of Hawai'i RCUH department, and by Research
School of Asian and Pacific Studies, Australia National University, Nov 2005.

"Outstanding Faculty Member" by the University of California, Santa Barbara
Residence Halls Association for showing a "genuine interest in the students," May 2002

Received department tuition wavers as a graduate student at the University of Hawai'i,
1999-2000





















**$10.00 Shaka Bucket**
Sailor Jerry, White Rum, Coconut Rum,
Blue Curacao, Pineapple

**$10.00 Hula Punch Bucket**
Sailor Jerry, Coconut Rum, Banana, Black,
Razz, Grenadine and OJ

**$8 Electric Blue**
Gin, Rum, Vodka, White Tequila,
Triple Sec, Sweet and Sour

**$8 Aloha Margarita**
Tequila, Grand Mariner, Lime Juice
Sweet and Sour

**$7 Melon Maddness**
Coconut Rum, Melon,
Pineapple

**$7 Bushwacker**
Rum, Cream de Cacao, Half and Half,
Coffee Liqueur, Chocolate Rimmed glass

**$6 Pink Lemonade**
Citrus Vodka, Triple Sec, Sweet and Sour,
Splash Cranberry, Splash Sprite

All Taxes Included





1388









You are here: BREG Online Services

| Begins with ∨ | Shaka | Search | 🛒 Cart |

**SEARCH RESULTS**

Home - BREG
BREG Online Services
  Annual Business Filing
  Search for a Business Entity
  Purchase Documents Online
  Purchase Certificate of Good Standing
  Authenticate a Certificate of Good Standing
  Register a Business
  MyBusiness Alerts NEW
  Entity List Builder
Contact BREG
Technical Support
Feedback
Create an Account

OFFLINE
*Live Chat*
*Technical Support*

Record Type Filter: Entity ∨    Status: ALL ∨    Entity Type: Corporation ∨

26 items found, displaying 1 to 26.      **Page View**

| NAME | RECORD TYPE | FILE NO. | STATUS ⓘ |
| --- | --- | --- | --- |
| SHAKA ACTION FUND FOR THE ENVIRONMENT (SAFE) | Entity | 243726 D2 | Nm. Chg. |
| SHAKA BAR INC. | Entity | 221407 D1 | Inv. Dissolved |
| SHAKA BRADDAH KAYAK, INC. | Entity | 212202 D1 | Inv. Dissolved |
| SHAKA COMMUNICATIONS, INC. | Entity | 109676 D1 | Inv. Dissolved |
| SHAKA ENGINEERING, INC. | Entity | 80177 D1 | Active |
| SHAKA ENTERPRISES, INC. | Entity | 97848 D1 | Inv. Dissolved |
| SHAKA GEAR, INC. | Entity | 218999 D1 | Inv. Dissolved |
| SHAKA HAWAIIAN DELI, INC. | Entity | 105856 D1 | Inv. Dissolved |
| SHAKA HOLDINGS, INC. | Entity | 209287 D1 | Inv. Dissolved |
| SHAKA INVESTMENT, INC. | Entity | 67092 D1 | Inv. Dissolved |
| SHAKA MOVEMENT | Entity | 242296 D2 | Active |
| SHAKA.NET CORPORATION | Entity | 107673 D1 | Inv. Dissolved |
| SHAKA PRESSED JUICE, INC. | Entity | 246920 D1 | 1 |
| SHAKA RECORD PRODUCTIONS, INC. | Entity | 116512 D1 | Inv. Dissolved |
| SHAKA RESTAURANT BRANDS LIMITED | Entity | 235987 D1 | Active |
| SHAKA RESTAURANT, INC. | Entity | 112005 D1 | Active |
| SHAKA SANDWICH & PIZZA, INC. | Entity | 78218 D1 | Active |
| SHAKA SHOES, INC. | Entity | 209287 D1 | Nm. Chg. |
| SHAKA SHOES, INC. | Entity | 212928 D1 | Inv. Dissolved |
| SHAKA SUSHI MAUI, INC. | Entity | 241025 D1 | Active |
| SHAKA TACOS, INC. | Entity | 216966 D1 | Inv. Dissolved |
| SHAKA TIME, INC. | Entity | 83872 D1 | Active |
| SHAKA TOURS KAUAI, INC. | Entity | 210983 D1 | Inv. Dissolved |
| SHAKA WIRELESS, INC. | Entity | 112442 D1 | Inv. Dissolved |
| SHAKANET, INC. | Entity | 201160 D1 | Active |
| SHAKAPELLA CORPORATION | Entity | 116079 D1 | Dissolved |

26 items found, displaying 1 to 26.      **Page View**

EXHIBIT
C
tabbies®

Subscription Services    Terms of Use    Privacy Policy    ADA Compliance    State Portal    Comments    Contact Us
Copyright © 2016 Hawaii Information Consortium, LLC. All rights reserved.
View in: Mobile | Classic

POWERED BY
ehawaii.gov

BREG Online Services - powered by eHawaii.gov                                    Page 1 of 3

You are here: BREG Online Services                    Begins with ▾ | Shaka          | Search    🛒 Cart

Home - BREG
BREG Online Services
    Annual Business Filing
    Search for a Business Entity
    Purchase Documents Online
    Purchase Certificate of Good
    Standing
    Authenticate a Certificate of
    Good Standing
    Register a Business
    MyBusiness Alerts NEW
    Entity List Builder
Contact BREG
Technical Support
Feedback
Create an Account



## SEARCH RESULTS

Record Type | Entity ▾ | Status | ALL ▾ | Entity Type | Limited Liability Company ▾
Filter

73 items found, displaying 1 to 73.                                    **Page View**

| NAME | RECORD TYPE | FILE NO. | STATUS ⓘ |
|---|---|---|---|
| SHAKA BEVERAGES LLC | Entity | 128900 C5 | Active |
| SHAKA BIKES & BOARDS, LLC | Entity | 24407 C5 | Terminated |
| SHAKA BOWLS LLC | Entity | 121447 C5 | Active |
| SHAKA BOY TOURS LLC | Entity | 160471 C5 | Active |
| SHAKA BOYZ AUTO SALES LLC | Entity | 72121 C5 | Terminated |
| SHAKA BOYZ CAR SALES LLC | Entity | 66493 C5 | Adm. Terminated |
| SHAKA BRADDAHS LLC | Entity | 92662 C5 | 1 |
| SHAKA BRAH LLC | Entity | 95233 C5 | Terminated |
| SHAKA BUSINESS CENTER, LLC | Entity | 33186 C5 | Active |
| SHAKA CAB LLC | Entity | 122859 C5 | 1 |
| SHAKA CAPITAL MANAGEMENT, LLC | Entity | 56251 C6 | Inv. Revoked |
| SHAKA CAR RENTAL LLC | Entity | 95587 C5 | Terminated |
| SHAKA CODE LLC | Entity | 130328 C5 | Active |
| SHAKA COFFEE LLC | Entity | 77372 C5 | Active |
| SHAKA CONSTRUCTION LLC | Entity | 73872 C5 | Adm. Terminated |
| SHAKA CONSULTING LLC | Entity | 104139 C5 | 1 |
| SHAKA DOGS NORTH SHORE LLC | Entity | 78178 C5 | Adm. Terminated |
| SHAKA DRIVING SCHOOL LLC | Entity | 76902 C5 | Terminated |
| SHAKA ENTERPRISES KAUAI, LLC | Entity | 28921 C5 | Adm. Terminated |
| SHAKA ENTERPRISES LLC | Entity | 37187 C5 | Adm. Terminated |
| SHAKA ENTERPRISES LLC | Entity | 89814 C5 | Adm. Terminated |
| SHAKA ENTERTAINMENT, LLC | Entity | 128450 C5 | Active |
| SHAKA FREEZE LLC | Entity | 133557 C5 | Active |
| SHAKA FRIENDS, LLC | Entity | 36558 C5 | Adm. Terminated |
| SHAKA FROM HAWAII LLC | Entity | 95929 C5 | Active |
| SHAKA GOLF GLOVES L.L.C. | Entity | 129195 C5 | Active |

| | | | |
|---|---|---|---|
| SHAKA GONE DEMOLITION & EXTRACTION LLC | Entity | 131093 C5 | Active |
| SHAKA GRINDZ ON DA GO L.L.C. | Entity | 79707 C5 | Adm. Terminated |
| SHAKA HAWAII TRANSPORTATION LLC | Entity | 114344 C5 | Terminated |
| SHAKA JAVA LLC | Entity | 26135 C5 | Adm. Terminated |
| SHAKA KAVA LLC | Entity | 41104 C5 | Active |
| SHAKA KAYAKS LLC | Entity | 65470 C5 | Active |
| SHAKA LAWNS AND LANDSCAPING LLC | Entity | 56012 C5 | Adm. Terminated |
| SHAKA LIFE LLC | Entity | 129357 C5 | Active |
| SHAKA, LLC | Entity | 29439 C6 | Active |
| SHAKA MACA L.L.C. | Entity | 48684 C5 | Adm. Terminated |
| SHAKA ONO INDUSTRIES LLC | Entity | 105333 C5 | Active |
| SHAKA PICS LLC | Entity | 98090 C5 | Adm. Terminated |
| SHAKA POP SHOP LLC | Entity | 89913 C5 | Active |
| SHAKA PUAKO, LLC | Entity | 30622 C5 | Nm. Chg. |
| SHAKA PUPS LLC | Entity | 79648 C5 | Adm. Terminated |
| SHAKA SALMON CO. LLC | Entity | 91737 C5 | Active |
| SHAKA SCIENCE, LLC | Entity | 23101 C5 | Terminated |
| SHAKA SEEDS LLC | Entity | 159324 C5 | Active |
| SHAKA SHACK LLC | Entity | 127419 C5 | Active |
| SHAKA SHACK SHAVE ICE L.L.C. | Entity | 58697 C5 | Adm. Terminated |
| SHAKA SHAKA TEA FRUIT PLANTATION - KING LLC | Entity | 120761 C5 | Active |
| SHAKA SHAKA TEA FRUIT PLANTATION LLC | Entity | 107351 C5 | Active |
| SHAKA SHAKA TEA FRUIT PLANTATION - SALT LAKE LLC | Entity | 151593 C5 | Active |
| SHAKA SHAKES, LLC | Entity | 126338 C5 | Active |
| SHAKA SHARK, LLC | Entity | 46141 C5 | Adm. Terminated |
| SHAKA SHUTTLE LLC | Entity | 134276 C5 | Active |
| SHAKA SNACKS L.L.C. | Entity | 150705 C5 | Active |
| SHAKA STUDIOS, LLC | Entity | 80750 C5 | Adm. Terminated |
| SHAKA SUNGLASSES LLC | Entity | 117432 C5 | Active |
| SHAKA SUPPLY LLC | Entity | 106945 C5 | Active |
| SHAKA SURF WEAR LLC | Entity | 44997 C5 | Terminated |
| SHAKA SYSTEMS LLC | Entity | 103625 C5 | Active |
| SHAKA! TAXI & TOURS LLC | Entity | 24779 C5 | Active |
| SHAKA TOURS, LLC | Entity | 80520 C5 | Active |

| SHAKA VAPE LLC | Entity | 110869 C5 | 1 |
| SHAKA VIBE, LLC | Entity | 112166 C5 | Active |
| SHAKA178, LLC | Entity | 35883 C6 | Active |
| SHAKABRAH COMPANY LLC | Entity | 43199 C5 | Adm. Terminated |
| SHAKACON LLC | Entity | 64012 C5 | Active |
| SHAKAKINESHUTTLES LLC | Entity | 145745 C5 | Active |
| SHAKAMAPS - LLC | Entity | 20123 C5 | Active |
| SHAKAS AND SNATCHES LLC | Entity | 115536 C5 | Active |
| SHAKA'S KE KAI SERVICES LLC | Entity | 82006 C5 | Adm. Terminated |
| SHAKA'S PAHOA LLC | Entity | 53162 C5 | Adm. Terminated |
| SHAKA'S PAHOA LLC | Entity | 148400 C5 | Active |
| SHAKASWEEPERS LLC | Entity | 30448 C5 | Active |
| SHAKA'Z KENDAMAS, LLC | Entity | 114004 C5 | 1 |

**73** items found, displaying 1 to 73.

**Page View**



You are here: BREG Online Services

| Begins with | Shaka | Search | 🛒 Cart |

**SEARCH RESULTS**

Record Type [Entity ▼]   Status [ALL ▼]   Entity Type [Partnership ▼]
Filter

**8** items found, displaying 1 to 8.          Page 1 of 1    [View All]

| NAME | RECORD TYPE | FILE NO. | STATUS |
|------|-------------|----------|--------|
| **SHAKA AUTO SALES** | Entity | 24940 G5 | Inv. Cancelled |
| **SHAKA CLOTHING CO.** | Entity | 32259 G5 | Inv. Cancelled |
| **SHAKA INDUSTRIES** | Entity | 16579 G5 | Inv. Cancelled |
| **SHAKA ISLAND WAY** | Entity | 26533 G5 | Dissolved |
| **SHAKA-LICIOUS SHRIMP SHACK** | Entity | 31299 G5 | Inv. Cancelled |
| **SHAKA MONGOOSE & CO.** | Entity | 16836 G5 | Dissolved |
| **SHAKA PRODUCTIONS** | Entity | 15368 G5 | Dissolved |
| **SHAKA SUSHI** | Entity | 24984 G5 | Inv. Cancelled |

**8** items found, displaying 1 to 8.          Page 1 of 1    [View All]

**Home - BREG**

BREG Online Services
  Annual Business Filing
  Search for a Business Entity
  Purchase Documents Online
  Purchase Certificate of Good Standing
  Authenticate a Certificate of Good Standing
  Register a Business
  MyBusiness Alerts NEW
  Entity List Builder
Contact BREG
Technical Support
Feedback
Create an Account

OFFLINE
*Live Chat*
*Technical Support*

Subscription Services    Terms of Use    Privacy Policy    ADA Compliance    State Portal    Comments    Contact Us
Copyright © 2016 Hawaii Information Consortium, LLC. All rights reserved.
View in: Mobile | **Classic**

POWERED BY
eHawaii.gov

Case 3:17-cv-00686-MCR-HTC   Document 42   Filed 01/05/18   Page 63 of 89

Florida Department of State

DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search By Entity Name /

Previous List    Next List

Entity Name Search
Search

## Entity Name List

| Corporate Name | Document Number | Status |
|---|---|---|
| SHAKA, INC. | F04000002362 | InActive |
| SHAKA, INC. | K74439 | INACT |
| SHAKA, LLC | L05000027499 | INACT |
| SHAKA CORP | P14000025364 | INACT |
| SHAKA, INCORPORATED | P95000017644 | INACT |
| SHAKA, INC. | P99000064977 | INACT |
| SHAKA 3, LLC | L16000083980 | Active |
| SHAKA 3, LLC | W16000028557 | Active |
| SHAKA 5 STAR SOCCER ACADEMY, INC. | P11000091746 | INACT |
| SHAKA A. SCOTT, P.A. | P09000018283 | Active |
| SHAKA BODY ART LLC | L16000186958 | Active |
| SHAKA BOWLS LLC | L14000168756 | INACT |
| SHAKA BRAH, INC. | P07000133841 | INACT |
| SHAKABREA FINANCIAL GROUP LLC | L11000049476 | INACT/UA |
| SHAKABUKU MANAGEMENT CORP. | P03000033769 | INACT |
| SHAKABUNNI, JA, LLC. | L11000049770 | Active |
| SHAKA CART SERVICES, LLC | L16000094505 | Active |
| SHAKA CLOTHING L.L.C | L09000106637 | INACT |
| SHAKADA, CORP. | L37059 | INACT |
| SHAKADU, INC. | P05000055208 | INACT |

Previous List    Next List

Entity Name Search
Search

Florida Department of State, Division of Corporations



EXHIBIT

D

Florida Department of State

DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search By Entity Name /

---

Previous List   Next List

Entity Name Search
Search

## Entity Name List

| Corporate Name | Document Number | Status |
|---|---|---|
| SHAKA ELECTRIC L.L.C. | L14000115092 | INACT |
| SHAKA ENERGY EXPLORATION, INC. | P11000047373 | Active |
| SHAKA FISHING TEAM, LLC | L08000035945 | Active |
| SHAKAI LLC | L12000024209 | Active |
| SHAKAI INVESTMENTS, LLC | L15000179929 | INACT/UA |
| SHAKA INTERNATIONAL HOLDINGS, LLC | L11000040033 | INACT |
| SHAKAITUTU, LLC | L06000029445 | INACT |
| SHAKA JON'S, LLC. | L08000086967 | INACT |
| SHAKA JON'S INC. | P10000046858 | INACT |
| SHAKA JON'S BOYNTON INC | P10000075174 | INACT |
| SHAKA JON'S LBTS INC | P10000050919 | INACT |
| SHAKA JONS MIAMI BEACH INC | P11000073374 | INACT |
| SHAKA JONS SURFSIDE INC | P12000020571 | Active |
| SHAKALA, LLC | L05000113862 | Active |
| SHAKA LAWN SERVICES,INC | P07000021075 | INACT |
| SHAKAL BEAUTY SERVICES OF PALM BEACH, INC. | P14000043394 | Active |
| SHAKAL-JACK PIPE COMPANY | 111484 | INACT |
| SHAKA MIK, LLC | L16000058212 | Active |
| SHA-KAN, LLC | L06000061286 | INACT |
| SHAKA NELSON LLC | L08000002625 | INACT |

Previous List   Next List

Entity Name Search
Search

---

Florida Department of State, Division of Corporations

Florida Department of State

DIVISION OF CORPORATIONS



Department of State  /  Division of Corporations  /  Search Records  /  Search By Entity Name  /

Previous List    Next List

Entity Name Search
Search

## Entity Name List

| Corporate Name | Document Number | Status |
|---|---|---|
| SHAKAPEELZ LLC | L13000072734 | INACT |
| SHAKAR, LLC | L16000034363 | Active |
| SHAKARA CORP. | J84365 | INACT |
| SHAKARA, L.C. | L03000035639 | INACT |
| SHAKAREE ENTERPRISES, INC. | P06000063502 | INACT |
| SHAKAR FAMILY, LLC | L04000085245 | Active |
| SHAKAR TEXTILES, INC. | S53723 | INACT |
| SHAKARYS TRUCKING LLC | L10000107315 | Active |
| SHAKARY'S TRUCKING, INC | P95000053478 | INACT |
| SHAKA SHACK, LLC | L15000162809 | INACT/UA |
| SHAKA SHOES, INC. | P96000020225 | NAME HS |
| SHAKAS PROPERTIES, LLC | L09000100718 | Active |
| SHAKA SUSHI & ROBATA GRILL LLC | L10000095706 | INACT |
| SHAKATAN DEFENSE, CORP | P15000018022 | InActive |
| SHAKA TECHNOLOGIES LLC | L13000140292 | InActive |
| SHAKATI LLC | L12000137572 | Active |
| SHAKA TOURS CORPORATION | V14264 | INACT |
| SHAKA TRADING LLC | L07000120723 | INACT |
| SHAKA TREE FARM SERVICES, LLC | L07000029788 | Active |
| SHAK ATTACK ENTERTAINMENT, LLC | L03000009742 | Active |

Previous List    Next List

Entity Name Search
Search

Florida Department of State, Division of Corporations

Florida Department of State

DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search By Entity Name /

Previous List    Next List

Entity Name Search
Search

# Entity Name List

| Corporate Name | Document Number | Status |
|---|---|---|
| SHAK ATTACK ENTERTAINMENT, INC. | P05000028951 | INACT |
| SHAK ATTACK INCENTIVES LLC | L13000018116 | INACT |
| SHAKA WATER ADVENTURES LLC | L16000043256 | Active |
| SHAKAY, LLC | L14000187728 | Active |
| SHAKAZO, LLC | L14000083386 | Active |
| SHAKA ZULU, INC. | P09000099857 | INACT |
| "SHAKA ZULU RESTAURANT LLC" | L14000109321 | INACT/UA |
| SHAKAZULU SERVICES, INC. | P06000044360 | INACT |
| SHAK CONNECTION LLC | L09000040467 | INACT |
| SHAK CONSULTANCY LLC | L14000069946 | Active |
| SHAK CONSULTING, INC. | P03000037254 | INACT |
| SHAK D LLC | L15000132398 | Active |
| SHAKE, LLC | L03000026538 | INACT |
| SHAKE, INC. | P09000053043 | InActive |
| SHAKE 2 SHAPE HOME 4 U INVESTMENTS LLC | L12000016334 | NAME HS |
| SHAKE 62 TRUCKING INC. | P02000054985 | INACT |
| SHAKE A HAND AND MAKE A FRIEND, LLC | L11000075083 | INACT |
| SHAKEALEDD DIGITAL MULTIMEDIA GRAPHICS INC | P05000079659 | NAME HS |
| SHAKE-A-LEG, INC. | P28341 | INACT |
| SHAKEALEGG MULTIMEDIA GRAPHICS INC. | P05000079659 | INACT |

Previous List    Next List

Entity Name Search
Search

sunbiz.org - Florida Department of State
Case 3:17-cv-00686-MCR-HTC   Document 42   Filed 01/05/18   Page 67 of 89
Page 1 of 1

Exhibit "E"

Florida Department of State

DIVISION OF CORPORATIONS



[Previous List](#)   [Next List](#)

Fictitious Name Search

Submit

# Fictitious Name List

| Fictitious Name | Address | City | State | County | Status |
|---|---|---|---|---|---|
| THE SHAKA BAR | 649 PENSACOLA BEACH BLVD | PENSACOLA BEACH | FL | MULTIPLE | A |
| THE SHAKA DOG | 3720 S US HIGHWAY 1 | GRANT | FL | BREVARD | A |
| SHAKAI DESIGNS | 5114 SHALE RIDGE TRAIL | ORLANDO | FL | MULTIPLE | E |
| SHAKA INTEKANATIONAL | 7045 CORAL COVE DR | ORLANDO | FL | MULTIPLE | A |
| SHAKA INTEKANATIONAL | 7226 W. COLONIAL DR | ORLANDO | FL | MULTIPLE | E |
| SHAKA INTEKANATIONAL | 7226 W. COLONIAL DRIVE SUITE 445 | ORLANDO | FL | ORANGE | V |
| SHAKA INTEKANATIONAL | 7226 WEST COLONIAL DR | ORLANDO | FL | MULTIPLE | E |
| SHAKA JONS | 4660 NORTH OCEAN DR | LAUDERDALE BY THE SEA | FL | BROWARD | E |
| SHAKAKAN HAIR STUDIO | 629 LA SALLE DR | ALTAMONTE SPRINGS | FL | SEMINOLE | A |
| SHAKAMOBILEMASSAGE | 5800 BEACH BLVD. #203-245 | JACKSONVILLE | FL | DUVAL | A |
| SHAKANAH TRANSPORT | 5658 LOUIS XIV CT APT C | TAMPA | FL | HILLSBOROUGH | E |
| SHAKARA ENTERPRISES | POST OFFICE BOX 140636 | GAINESVILLE | FL | ALACHUA | E |
| SHAKAR'S MOBILE SHISH KEBOBS | 9986 LARKDALE CT | JACKSONVILLE | FL | MULTIPLE | E |
| SHAKARYAN BROS. TRUCKING & TOWING | 9986 LARKDALE CT | JACKSONVILLE | FL | MULTIPLE | E |
| SHAKARY'S TRUCKING | 6412 ALLEN ST | HOLLYWOOD | FL | BROWARD | E |
| SHAKA SPA AND SALON | 174 SYCAMORE SUNSHINE LANE | NEW SMYRNA BEACH | FL | VOLUSIA | E |
| SHAKA SURF COMPANY | 6278 NORTH FEDERAL HIGHWAY | FORT LAUDERDALE | FL | MULTIPLE | A |
| SHAKA TRANSPORTATION | 113 CATERHAM WAY | KISSIMMEE | FL | OSCEOLA | E |
| SHAKA ZULU'S | 1777 POLK ST., SUITE S-1 | HOLLYWOOD | FL | BROWARD | E |
| SHAK-DRICK VALET PARKING COMPANY | 12350 SW 188 TERRECE | MIAMI | FL | MULTIPLE | E |

[Previous List](#)   [Next List](#)

Fictitious Name Search

Submit

Florida Department of State, Division of Corporations



**EXHIBIT**

tabbies

E

# United States of America
## United States Patent and Trademark Office

# SHAKA LAKA

**Reg. No. 5,038,824**

**Registered Sep. 13, 2016**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Alimentos Ideal, S.A. (GUATEMALA sociedad anonima (sa) )
Via 3, 6-69 Zona 4
Guatemala City GUATEMALA 65811-1

CLASS 32: Mineral and carbonated waters: Non-alcoholic beverages, namely, carbonated beverages

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF GUATEMALA REG. NO. 161,237, DATED 02-02-2009, RENEWED AS REG. NO. 161,237 , EXPIRES 02-01-2019

SER. NO. 86-519,214, FILED 01-30-2015
DORITT CARROLL, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office



EXHIBIT
F

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Generated on: This page was generated by TSDR on 2016-10-24 13:54:16 EDT

Mark: SHAKA LAKA

# SHAKA LAKA

US Serial Number: 86519214

Application Filing Date: Jan. 30, 2015

US Registration Number: 5038824

Registration Date: Sep. 13, 2016

Filed as TEAS Plus: Yes

Currently TEAS Plus: Yes

Register: Principal

Mark Type: Trademark

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: Sep. 13, 2016

Publication Date: Jul. 07, 2015

## Mark Information

Mark Literal Elements: SHAKA LAKA

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

## Foreign Information

Foreign Registration Number: 161,237

Foreign Registration Date: Feb. 02, 2009

Foreign Application/Registration Country: GUATEMALA

Foreign Expiration Date: Feb. 01, 2019

## Goods and Services

Note: The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Mineral and carbonated waters; Non-alcoholic beverages, namely, carbonated beverages

International Class(es): 032 - Primary Class

U.S Class(es): 045, 046, 048

Class Status: ACTIVE

Basis: 44(e)

## Basis Information (Case Level)

| | | |
|---|---|---|
| Filed Use: No | Currently Use: No | Amended Use: No |
| Filed ITU: Yes | Currently ITU: No | Amended ITU: No |
| Filed 44D: No | Currently 44D: No | Amended 44D: No |
| Filed 44E: Yes | Currently 44E: Yes | Amended 44E: No |
| Filed 66A: No | Currently 66A: No | |
| Filed No Basis: No | Currently No Basis: No | |

# Current Owner(s) Information

| | |
|---|---|
| Owner Name: | Alimentos Ideal, S.A. |
| Owner Address: | Via 3, 6-69 Zona 4<br>Guatemala City 65811-1<br>GUATEMALA |
| Legal Entity Type: | sociedad anonima (sa) |

State or Country GUATEMALA
Where Organized:

# Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| Attorney Name: | Albert Bordas, |
| Attorney Primary<br>Email Address: | tm@bordasiplaw.com |

Attorney Email  Yes
Authorized:

### Correspondent

| | |
|---|---|
| Correspondent<br>Name/Address: | Albert Bordas,<br>Albert Bordas, P.A.<br>5975 Sunset Drive<br>Suite 705<br>Miami, FLORIDA 33143-5174<br>UNITED STATES |
| Phone: | (305) 669-9848 |

Fax:  (305) 669-9851

| | |
|---|---|
| Correspondent e-<br>mail: | tm@bordasiplaw.com |

Correspondent e-  Yes
mail Authorized:

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Sep. 13, 2016 | REGISTERED-PRINCIPAL REGISTER | |
| Aug. 10, 2016 | 1(B) BASIS DELETED; PROCEED TO REGISTRATION | 66530 |
| Aug. 10, 2016 | NOTICE OF ALLOWANCE CANCELLED | 66530 |
| Jul. 14, 2016 | TEAS POST PUBLICATION AMENDMENT RECEIVED | |
| Feb. 17, 2016 | NOTICE OF APPROVAL OF EXTENSION REQUEST E-MAILED | |
| Feb. 15, 2016 | EXTENSION 1 GRANTED | 98765 |
| Feb. 15, 2016 | EXTENSION 1 FILED | 98765 |
| Feb. 15, 2016 | TEAS EXTENSION RECEIVED | |
| Oct. 22, 2015 | ATTORNEY REVOKED AND/OR APPOINTED | |
| Oct. 22, 2015 | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | |
| Oct. 22, 2015 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Sep. 01, 2015 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Jul. 07, 2015 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Jul. 07, 2015 | PUBLISHED FOR OPPOSITION | |
| Jun. 17, 2015 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jun. 04, 2015 | ELECTRONIC RECORD REVIEW COMPLETE | 76572 |
| May 15, 2015 | ON HOLD - ELECTRONIC RECORD REVIEW REQUIRED | |
| May 04, 2015 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| May 04, 2015 | ASSIGNED TO EXAMINER | 73703 |
| Feb. 09, 2015 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Feb. 03, 2015 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information - None

### File Location

Current Location:  PUBLICATION AND ISSUE SECTION          Date in Location:  Sep. 13, 2016

# United States of America

### United States Patent and Trademark Office

# SHAKA POWER

**Reg. No. 4,727,568**

**Registered Apr. 28, 2015**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

STONE, CHRIS (UNITED STATES INDIVIDUAL)
SUITE A
1181 GRIER DR.
LAS VEGAS, NV 89118 AND

PAULINO, GINO (UNITED STATES INDIVIDUAL)
SUITE 524-169
590 FARRINGTON HWY
KAPOLEI, HI 96707 AND

LEE, DOUG (UNITED STATES INDIVIDUAL)
SUITE A
1181 GRIER DR.
LAS VEGAS, NV 89118

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, ENERGY DRINKS AND SPORTS DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 7-23-2014; IN COMMERCE 7-23-2014.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-397,984, FILED 9-17-2014.

SHAVELL MCPHERSON, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL
## TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations.  *See* 15 U.S.C. §§1058, 1141k.  However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at**  http://www.uspto.gov.

Generated on: This page was generated by TSDR on 2016-10-24 13:55:25 EDT

Mark: SHAKA POWER

## SHAKA POWER

| | | | |
|---|---|---|---|
| US Serial Number: | 86397984 | Application Filing Date: | Sep. 17, 2014 |
| US Registration Number: | 4727568 | Registration Date: | Apr. 28, 2015 |
| Register: | Principal | | |
| Mark Type: | Trademark | | |

TM5 Common Status Descriptor: 

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: Apr. 28, 2015

Publication Date: Feb. 10, 2015

# Mark Information

Mark Literal Elements: SHAKA POWER

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

# Goods and Services

Note: The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Non-alcoholic beverages, namely, energy drinks and sports drinks

International Class(es): 032 - Primary Class     U.S Class(es): 045, 046, 048

Class Status: ACTIVE

Basis: 1(a)

First Use: Jul. 23, 2014     Use in Commerce: Jul. 23, 2014

# Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes | Amended Use: | No |
| Filed ITU: | No | Currently ITU: | No | Amended ITU: | No |
| Filed 44D: | No | Currently 44D: | No | Amended 44D: | No |
| Filed 44E: | No | Currently 44E: | No | Amended 44E: | No |
| Filed 66A: | No | Currently 66A: | No | | |
| Filed No Basis: | No | Currently No Basis: | No | | |

# Current Owner(s) Information

Owner Name: Stone, Chris

Owner Address: Suite A

1181 Grier Dr.
Las Vegas, NEVADA UNITED STATES 89118

**Legal Entity Type:** INDIVIDUAL                                    **Citizenship:** UNITED STATES

**Owner Name:** Paulino, Gino

**Owner Address:** Suite 524-169
590 Farrington Hwy
Kapolei, HAWAII UNITED STATES 96707

**Legal Entity Type:** INDIVIDUAL                                    **Citizenship:** UNITED STATES

**Owner Name:** Lee, Doug

**Owner Address:** Suite A
1181 Grier Dr.
Las Vegas, NEVADA UNITED STATES 89118

**Legal Entity Type:** INDIVIDUAL                                    **Citizenship:** UNITED STATES

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** ROB L. PHILLIPS                 **Docket Number:** 154708.01010

**Attorney Primary** docketing@fisherbroyles.com     **Attorney Email** Yes
**Email Address:**                                    **Authorized:**

### Correspondent

**Correspondent** ROB L. PHILLIPS
**Name/Address:** FISHERBROYLES, LLP
885 WOODSTOCK ROAD
SUITE 430-383
ROSWELL, GEORGIA UNITED STATES 30075

**Phone:** 702-518-1239

**Correspondent e-** docketing@fisherbroyles.com rob.phillips@fisherb    **Correspondent e-** Yes
**mail:** royles.com                                            **mail Authorized:**

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Sep. 28, 2016 | ATTORNEY REVOKED AND/OR APPOINTED | |
| Sep. 28, 2016 | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | |
| Feb. 08, 2016 | ATTORNEY REVOKED AND/OR APPOINTED | |
| Feb. 08, 2016 | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | |
| Apr. 28, 2015 | REGISTERED-PRINCIPAL REGISTER | |
| Feb. 10, 2015 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Feb. 10, 2015 | PUBLISHED FOR OPPOSITION | |
| Jan. 21, 2015 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Dec. 30, 2014 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Dec. 30, 2014 | ASSIGNED TO EXAMINER | 78477 |
| Sep. 25, 2014 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Sep. 20, 2014 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

### TM Staff Information - None

### File Location

**Current Location:** PUBLICATION AND ISSUE SECTION          **Date in Location:** Apr. 28, 2015

# United States of America
## United States Patent and Trademark Office

# Shaka Sauce

**Reg. No. 4,958,914**

**Registered May 17, 2016**

**Int. Cl.: 30**

**TRADEMARK**

**PRINCIPAL REGISTER**

SHAKA, LLC (COLORADO LIMITED LIABILITY COMPANY)
10570 ECHO COURT
FIRESTONE, CO 80504

FOR: HOT SAUCE, IN CLASS 30 (U.S. CL. 46).

FIRST USE 12-22-2014; IN COMMERCE 12-22-2014.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SAUCE", APART FROM THE
MARK AS SHOWN.

SER. NO. 86-733,628, FILED 8-22-2015.

JAY FLOWERS, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

*First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

*Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
*See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.**

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at  http://www.uspto.gov.**

Generated on: This page was generated by TSDR on 2016-10-24 13:52:04 EDT

Mark: SHAKA SAUCE

Shaka Sauce

US Serial Number: 86733628

Application Filing Date: Aug. 22, 2015

US Registration Number: 4958914

Registration Date: May 17, 2016

Filed as TEAS Plus: Yes

Currently TEAS Plus: Yes

Register: Principal

Mark Type: Trademark

TM5 Common Status Descriptor:

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: May 17, 2016

Publication Date: Mar. 01, 2016

## Mark Information

Mark Literal Elements: SHAKA SAUCE

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

Disclaimer: "SAUCE"

## Goods and Services

Note: The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Hot sauce

International Class(es): 030 - Primary Class

U.S Class(es): 046

Class Status: ACTIVE

Basis: 1(a)

First Use: Dec. 22, 2014

Use in Commerce: Dec. 22, 2014

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes | Amended Use: | No |
| Filed ITU: | No | Currently ITU: | No | Amended ITU: | No |
| Filed 44D: | No | Currently 44D: | No | Amended 44D: | No |
| Filed 44E: | No | Currently 44E: | No | Amended 44E: | No |
| Filed 66A: | No | Currently 66A: | No | | |
| Filed No Basis: | No | Currently No Basis: | No | | |

## Current Owner(s) Information

**Owner Name:** SHAKA, LLC

**Owner Address:** 10570 ECHO COURT
FIRESTONE, COLORADO UNITED STATES 80504

**Legal Entity Type:** LIMITED LIABILITY COMPANY

**State or Country** COLORADO
**Where Organized:**

# Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Eric Goodman

**Docket Number:** SHA03-200

**Attorney Primary** uspto@goodmanmooney.com
**Email Address:**

**Attorney Email** Yes
**Authorized:**

### Correspondent

**Correspondent** Eric Goodman
**Name/Address:** Goodman Mooney, LLP
3420 Bristol Street, Sixth Floor
Costa Mesa, CALIFORNIA UNITED STATES 92626

**Phone:** 9496220020

**Fax:** 9496220024

**Correspondent e-mail:** uspto@goodmanmooney.com

**Correspondent e-** Yes
**mail Authorized:**

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| May 17, 2016 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 01, 2016 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Mar. 01, 2016 | PUBLISHED FOR OPPOSITION | |
| Feb. 10, 2016 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jan. 17, 2016 | ATTORNEY REVOKED AND/OR APPOINTED | |
| Jan. 17, 2016 | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | |
| Dec. 07, 2015 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Dec. 07, 2015 | EXAMINER'S AMENDMENT ENTERED | 88888 |
| Dec. 07, 2015 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | 6328 |
| Dec. 07, 2015 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| Dec. 07, 2015 | EXAMINERS AMENDMENT -WRITTEN | 83189 |
| Dec. 07, 2015 | ASSIGNED TO EXAMINER | 83189 |
| Sep. 30, 2015 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Aug. 26, 2015 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Aug. 26, 2015 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information - None

### File Location

**Current Location:** PUBLICATION AND ISSUE SECTION

**Date in Location:** May 17, 2016

# Assignment Abstract Of Title Information

### Summary

**Total Assignments:** 1

**Registrant:** SHAKA, LLC

### Assignment 1 of 1

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Reel/Frame:** 5630/0061

**Pages:** 2

**Date Recorded:** Sep. 24, 2015

**Supporting** assignment-tm-5630-0061.pdf
**Documents:**

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | PARSONS, MATTHEW | **Execution Date:** | Sep. 24, 2015 |
| **Legal Entity Type:** | INDIVIDUAL | **Citizenship:** | No Citizenship Found |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | SHAKA, LLC | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | COLORADO |
| **Address:** | 10570 ECHO COURT FIRESTONE, COLORADO 80504 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | ERIC GOODMAN |
| **Correspondent Address:** | 3420 BRISTOL STREET, SIXTH FLOOR COSTA MESA, CA 92626 |

**Domestic Representative - Not Found**

# United States of America

## United States Patent and Trademark Office

# shaka tea

**Reg. No. 4,969,821**

**Registered May 31, 2016**

HARRISON RICE (UNITED STATES INDIVIDUAL)
2774 LANILOA RD
HONOLULU, HI 96813

**Int. Cl.: 30**

FOR: BEVERAGES MADE OF TEA; BEVERAGES WITH A TEA BASE; COFFEE AND TEA;
FRUIT TEAS; GINGER TEA; GREEN TEA; HERB TEA, IN CLASS 30 (U.S. CL. 46).

**TRADEMARK**

FIRST USE 5-15-2015; IN COMMERCE 1-25-2016.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TEA", APART FROM THE
MARK AS SHOWN.

SN 86-523,849, FILED 2-4-2015.

JAMES GRIFFIN, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Generated on: This page was generated by TSDR on 2016-10-24 13:53:06 EDT

Mark: SHAKA TEA

shaka tea

| | | | |
|---|---|---|---|
| **US Serial Number:** | 86523849 | **Application Filing Date:** | Feb. 04, 2015 |
| **US Registration Number:** | 4969821 | **Registration Date:** | May 31, 2016 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Status Date:** May 31, 2016

**Publication Date:** Jul. 14, 2015     **Notice of Allowance Date:** Sep. 08, 2015

# Mark Information

**Mark Literal Elements:** SHAKA TEA

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

**Disclaimer:** "TEA"

# Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Beverages made of tea; Beverages with a tea base; Coffee and tea; Fruit teas; Ginger tea; Green tea; Herb tea

**International Class(es):** 030 - Primary Class     **U.S Class(es):** 046

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** May 15, 2015     **Use in Commerce:** Jan. 25, 2016

# Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes | **Amended Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | No | **Amended ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No | **Amended 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No | **Amended 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No | | |
| **Filed No Basis:** | No | **Currently No Basis:** | No | | |

# Current Owner(s) Information

| | |
|---|---|
| Owner Name: | Harrison Rice |
| Owner Address: | 2774 Laniloa Rd |
| | Honolulu, HAWAII UNITED STATES 96813 |
| Legal Entity Type: | INDIVIDUAL |

Citizenship:  UNITED STATES

# Attorney/Correspondence Information

### Attorney of Record - None

### Correspondent

| | |
|---|---|
| Correspondent Name/Address: | HARRISON RICE |
| | 2774 Laniloa Rd |
| | Honolulu, HAWAII UNITED STATES 96813-1073 |
| Correspondent e-mail: | harrison.zach.rice@gmail.com |

Correspondent e-mail Authorized:  Yes

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 31, 2016 | REGISTERED-PRINCIPAL REGISTER | |
| Apr. 27, 2016 | NOTICE OF ACCEPTANCE OF STATEMENT OF USE E-MAILED | |
| Apr. 26, 2016 | ALLOWED PRINCIPAL REGISTER - SOU ACCEPTED | |
| Apr. 07, 2016 | STATEMENT OF USE PROCESSING COMPLETE | 66230 |
| Mar. 03, 2016 | USE AMENDMENT FILED | 66230 |
| Apr. 06, 2016 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | 66230 |
| Mar. 03, 2016 | TEAS STATEMENT OF USE RECEIVED | |
| Sep. 08, 2015 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Jul. 14, 2015 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Jul. 14, 2015 | PUBLISHED FOR OPPOSITION | |
| Jun. 24, 2015 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jun. 09, 2015 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 66121 |
| Jun. 07, 2015 | ASSIGNED TO LIE | 66121 |
| May 15, 2015 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| May 15, 2015 | EXAMINER'S AMENDMENT ENTERED | 88888 |
| May 15, 2015 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | 6328 |
| May 15, 2015 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| May 15, 2015 | EXAMINERS AMENDMENT -WRITTEN | 74784 |
| May 11, 2015 | ASSIGNED TO EXAMINER | 74784 |
| Feb. 13, 2015 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Feb. 07, 2015 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information - None

### File Location

| | | |
|---|---|---|
| Current Location: | PUBLICATION AND ISSUE SECTION | Date in Location:  Apr. 26, 2016 |

# United States of America

## United States Patent and Trademark Office

# SHAKABURRITO!

**Reg. No. 4,299,157**

**Registered Mar. 5, 2013**

ALOHA HEALTHY FOODS, LLC (NEW JERSEY LIMITED LIABILITY COMPANY)
40 ROUTE 5
FORT LEE, NJ 07424

**Int. Cl.: 43**

FOR: RESTAURANT SERVICES, IN CLASS 43 (U.S. CLS. 100 AND 101).

**SERVICE MARK**

FIRST USE 7-24-2012; IN COMMERCE 7-24-2012.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SN 85-502,341, FILED 12-22-2011.

ELLEN B. AWRICH, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

Generated on: This page was generated by TSDR on 2016-10-24 13:50:54 EDT

Mark: SHAKABURRITO!

# SHAKABURRITO!

| | | | |
|---|---|---|---|
| US Serial Number: | 85502341 | Application Filing Date: | Dec. 22, 2011 |
| US Registration Number: | 4299157 | Registration Date: | Mar. 05, 2013 |
| Register: | Principal | | |
| Mark Type: | Service Mark | | |

TM5 Common Status Descriptor:



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: Mar. 05, 2013

Publication Date: May 22, 2012

Notice of Allowance Date: Jul. 17, 2012

## Mark Information

Mark Literal Elements: SHAKABURRITO!

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

## Goods and Services

Note: The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Restaurant services

International Class(es): 043 - Primary Class

U.S Class(es): 100, 101

Class Status: ACTIVE

Basis: 1(a)

First Use: Jul. 24, 2012

Use in Commerce: Jul. 24, 2012

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| Filed Use: | No | Currently Use: | Yes | Amended Use: | No |
| Filed ITU: | Yes | Currently ITU: | No | Amended ITU: | No |
| Filed 44D: | No | Currently 44D: | No | Amended 44D: | No |
| Filed 44E: | No | Currently 44E: | No | Amended 44E: | No |
| Filed 66A: | No | Currently 66A: | No | | |
| Filed No Basis: | No | Currently No Basis: | No | | |

## Current Owner(s) Information

Owner Name: ALOHA HEALTHY FOODS, LLC

Owner Address: 40 ROUTE 5
FORT LEE, NEW JERSEY UNITED STATES 07424

Legal Entity Type: LIMITED LIABILITY COMPANY    State or Country   NEW JERSEY
Where Organized:

# Attorney/Correspondence Information

### Attorney of Record

Attorney Name: David H.E. Bursik, Esq.

Attorney Primary   dheb@bursik.com        Attorney Email   No
Email Address:                            Authorized:

### Correspondent

Correspondent   David H.E. Bursik, Esq.
Name/Address:   401 Hamburg Turnpike
Suite 201
Wayne, NEW JERSEY UNITED STATES 07470

Phone: 973-904-1040                        Fax: 973-828-0343

Correspondent e-   dheb@bursik.com         Correspondent e-   Yes
mail:                                      mail Authorized:

Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Mar. 05, 2013 | REGISTERED-PRINCIPAL REGISTER | |
| Jan. 26, 2013 | NOTICE OF ACCEPTANCE OF STATEMENT OF USE E-MAILED | |
| Jan. 25, 2013 | LAW OFFICE REGISTRATION REVIEW COMPLETED | 68171 |
| Jan. 24, 2013 | ALLOWED PRINCIPAL REGISTER - SOU ACCEPTED | |
| Jan. 23, 2013 | STATEMENT OF USE PROCESSING COMPLETE | 70565 |
| Dec. 31, 2012 | USE AMENDMENT FILED | 70565 |
| Jan. 23, 2013 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | 70565 |
| Jan. 09, 2013 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Dec. 31, 2012 | TEAS STATEMENT OF USE RECEIVED | |
| Oct. 31, 2012 | WITHDRAWAL OF ATTORNEY GRANTED | |
| Oct. 31, 2012 | TEAS WITHDRAWAL OF ATTORNEY RECEIVED | |
| Jul. 17, 2012 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| May 22, 2012 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| May 22, 2012 | PUBLISHED FOR OPPOSITION | |
| May 02, 2012 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Apr. 18, 2012 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 68171 |
| Apr. 18, 2012 | ASSIGNED TO LIE | 68171 |
| Mar. 28, 2012 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Mar. 28, 2012 | ASSIGNED TO EXAMINER | 70703 |
| Jan. 05, 2012 | NOTICE OF PSEUDO MARK MAILED | |
| Jan. 04, 2012 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Dec. 26, 2011 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information - None

### File Location

Current Location: PUBLICATION AND ISSUE SECTION    Date in Location: Jan. 25, 2013

# Assignment Abstract Of Title Information

### Summary

Total Assignments: 1                 Registrant:  ALOHA HEALTHY FOODS, LLC

### Assignment 1 of 1

Conveyance: ASSIGNS THE ENTIRE INTEREST

Reel/Frame: 4931/0855                                           Pages: 2

Date Recorded: Dec. 31, 2012

Supporting assignment-tm-4931-0855.pdf
Documents:

**Assignor**

Name: SCIORTINO, PHILIP                    Execution Date: May 15, 2012

Legal Entity Type: INDIVIDUAL                    Citizenship: UNITED STATES

**Assignee**

Name: ALOHA HEALTHY FOODS, LLC

Legal Entity Type: LIMITED LIABILITY COMPANY        State or Country NEW JERSEY
                                                    Where Organized:

Address: 40 ROUTE 5
         FORT LEE, NEW JERSEY 07424

**Correspondent**

Correspondent DAVID H.E. BURSIK, ESQ.
Name:

Correspondent 401 HAMBURG TURNPIKE
Address: SUITE 201
         WAYNE, NJ 07470

**Domestic Representative - Not Found**